UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit corporation, *et al.*,<br><br>　　　　　　　Plaintiffs,<br>　vs.<br><br>DAGGETT COMMUNITY SERVICES DISTRICT,<br>　　　　　　　Defendant. | Case No.: 5:24-cv-00727-AB-DTB<br><br>**[PROPOSED] CONSENT DECREE AND FINAL JUDGMENT** |

1

# CONSENT DECREE

**WHEREAS**, California River Watch (hereinafter "CRW" or "Plaintiff") is an Internal Revenue Code § 501(c)(3) nonprofit, public benefit corporation organized under the laws of the State of California, dedicated to protecting, enhancing, and helping to restore the surface and ground waters of California including coastal areas, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and to educating the public concerning environmental issues associated with these environs;

**WHEREAS**, Daggett Community Services District (hereinafter "DCSD" "Daggett" or "Defendant") is a special-purpose government district organized on March 25, 1957 to provide water distribution, fire, park and streeting lights for customers in its service area that is located in unincorporated San Bernardino County. Daggett provides water to approximately 183 customers from one operational well, Well 7. Daggett is governed by an elected Board of Directors. Daggett is considered to be a small "supplier of water" as defined under the federal Safe Drinking Water Act ("SDWA"; 42 U.S.C. § 300f *et seq.*) in 42 U.S.C. § 300f(5) and 40 C.F.R. § 121.2, and owns and operates a "public water system," as defined by 42 U.S.C. § 300f(4) and 40 C.F.R. § 141.2 and permitted by the California State Water Resources Control Board ("State Water Board") under California Water System No. CA3600086;

**WHEREAS,** on or about September 11, 2023, CRW through its authorized representative issued a Notice of Intent to file suit ("60-Day Notice"), and on or about March 25, 2024, CRW issued a Supplemental Notice of Intent to file suit ("Supplemental 60-Day Notice") to Defendant, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region IX, the Executive Director of the State Water Board , and the Attorney General of the State of Calfornia, alleging violations of the SDWA (collectively, "Notices");

1 **WHEREAS,** on April 8, 2024 CRW filed its initial Complaint against Daggett in this Court, Civil Case No. 5:24-cv-00727-AB-DTB, and with co-Plaintiff Lodging Enterprises, LLC filed a First Amended Complaint on June 12, 2024, and a Second Amended Complaint ("SAC") on January 6, 2025. The Second Amended Complaint is the operative complaint.

**WHEREAS** CRW contends it has standing to prosecute this Action; Daggett disagrees;

**WHEREAS**, Daggett denies all allegations in the Notices and the Second Amended Complaint and reserves all rights and defenses with respect to such allegations and claims;

**WHEREAS,** in June 2024 a feasibility study was prepared for Daggett to assess potential alternatives to address identified deficiencies with its existing water distribution system, including water supply reliability, water quality concerns, and aging infrastructure. Full physical consolidation with Golden State Water Company ("Golden State") was determined to be the only feasible alternative.

**WHEREAS**, CRW and Daggett (collectively "Settling Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving CRW's concerns about Daggett's SDWA compliance, including the allegations and claims set forth by CRW in the Notices and Second Amended Complaint without further proceedings; and

**WHEREAS**, all actions taken by Daggett pursuant to this Proposed Consent Decree shall be made in compliance with all applicable federal, state, and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. Subject matter jurisdiction is conferred upon this Court by SDWA §1449(a), 42 §300j-8(a), which states in part,

any person may commence a civil action on his own behalf against . . .any person … who is alleged to be in violation of any requirement prescribed by or under [SDWA] ... The United States district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce in an action brought under [SWDA] any requirement prescribed by or under [SWDA] ... .

2.  For purposes of SDWA §1449(a), "the term 'person' means an individual, corporation, [or] association... ." under SDWA §1401(12), 42 U.S.C. §300f(12).

3.  All violations and activities complained of occurred within the public water system owned and operated by Daggett.

4.  This Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the five (5) year term of this Consent Decree.

## OBJECTIVES

5.  It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the SDWA, and to resolve all issues alleged by CRW in its Notices and Second Amended Complaint. These objectives include compliance with the provisions of this Consent Decree and compliance with all terms and conditions of the SDWA .

6.  In light of these objectives and as set forth fully below, the Settling Parties agree to comply with the provisions of this Consent Decree, and all applicable sections of the SDWA.

## CONSENT DECREE TERM

### Effective Date and Term of Consent Decree

7.  <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry by the Court.

8. <u>Term & Termination</u>. This Consent Decree shall terminate five (5) years from the Effective Date, or upon the date Daggett ceases to serve water from its well, if earlier.

**COMMITMENTS OF THE SETTLING PARTIES**

9. Daggett will request that the State Water Board and the State Water Board appointed administrator for Daggett's water system notify CRW by including it on any public distribution list for any public meetings or public communications involving the administration of Daggett's water operation.

10. Daggett will further request that the State Water Board and the administrator appointed over Daggett's water system notify CRW by including it on any public distribution list for any public meetings or public communications related to the planned consolidation with Golden State.

11. Daggett agrees that it will continue actively pursuing a consolidation of its water operation with Golden State to address a variety of issues including water quality, and will make good faith efforts and take actions within its reasonable control to achieve the consolidation as soon as practicable. CRW acknowledges that the final decision to consolidate requires approval of the Daggett Board of Directors at a public meeting held in compliance with the Ralph M. Brown Act, the approval of Golden State, and approval by the State Water Board, and that this Consent Decree cannot require the Daggett Board of Directors to agree to vote in favor of consolidation at a subsequent meeting. Further, consolidation is contingent upon satisfactory engineering analysis, compliance with the California Environmental Quality Act and National Environmental Policy Act (if deemed applicable), continued funding, approval by the Local Agency Formation Commission for San Bernardino County to adjust service boundaries, water service and asset agreements between Daggett and Golden State, approval of new or expanded water rates, possible approval by the California Public Utilities Commission, and construction of the distribution infrastructure. It is anticipated that full physical consolidation of

1  Daggett's water operation with Golden State will take approximately five years.

2    12. Until full physical consolidation is achieved Daggett will make good
3  faith efforts to apply for grants to provide bottled water in its service area.

**LITIGATION FEES AND COSTS**

  13. <u>Attorneys' Fees and Costs</u>.  Within thirty (30) calendar days after the Effective Date of this Consent Decree, Daggett shall pay CRW the sum of One Hundred Five Thousand Dollars ($105,000.00) as reimbursement for CRW's investigative and attorneys' fees and costs incurred, including any future costs and fees incurred by CRW in the implementation of this Consent Decree. Payment shall be made in the form of a single check payable to "California River Watch" and mailed to the Law Office of Jack Silver, 708 Gravenstein Highway North, #407, Sebastopol, CA 95472. Said payment shall constitute full and complete satisfaction of all costs and attorneys' fees incurred by CRW that have been or could have been claimed in connection with this matter up to and including the Effective Date of this Consent Decree, and for CRW's expert's and attorneys' fees and costs for monitoring and enforcing Daggett's compliance with the ongoing obligations under this Consent Decree up to and including the Termination Date.

  14. CRW shall provide its W-9 to Daggett prior to transmittal of payment in paragraph 13 above.

**MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

  15. <u>Settling Parties' Waiver and Release</u>.  In consideration of the above, upon the Effective Date of this Consent Decree, and except as otherwise provided by this Consent Decree, the Settling Parties hereby and forever fully release each other and their respective officers, directors, agents, representatives, successors, members, and assigns from any and all claims, liabilities, damages, injuries, actions or causes of action, either at law or in equity, that were or could have been raised based on the facts alleged in the Notices and Second Amended Complaint. The release provided for herein shall be valid and effective whether the claims, causes of action, or

liabilities hereby released (*i*) were known or unknown, suspected, or unsuspected, (*ii*) were based in contract, tort, statute, regulation, or otherwise, or (*iii*) arise at law or in equity. The Settling Parties acknowledge that they are familiar with Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settling Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code Section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the Notices and Second Amended Complaint.

16. <u>Agreement Not to Sue</u>.  As of the Effective Date of this Consent Decree CRW agrees that neither CRW, its officers, executive staff, members of its governing board, nor any organization under the control of or affiliated with CRW, its officers, executive staff, members of its governing board, will file any lawsuit against Daggett seeking relief for alleged violations of the SDWA based on the facts alleged in the Notices, Daggett's Consumer Confidence Reports published during the pendency of this Action, and the Second Amended Complaint. CRW further agrees that, beginning on the Effective Date  CRW will not support other lawsuits, or assist in the preparation of SDWA notices or claims, by providing financial assistance, personnel time, or other affirmative actions against Daggett that may be proposed by other groups or individuals who would rely upon the provisions of the SDWA to challenge compliance with the SDWA with respect to Daggett's operations as a supplier of water and owner of a public water system, based on the facts alleged in the Notices, Daggett Consumer Confidence Reports published during the pendency of this Action,

and the Second Amended Complaint.

17. <u>No Admission of Liability</u>.  The Settling Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. This Consent Decree shall not, for any purpose, be considered a concession that CRW has standing to bring this lawsuit or an admission of liability or responsibility by Daggett, nor shall the implementation of remedial actions or payment of any sum of money in consideration for the execution of this Consent Decree constitute or be construed as an admission of liability or responsibility by Daggett which expressly denies any such liability, responsibility, or wrongdoing. Daggett maintains and reserves all defenses that it may have to any alleged violations that may be raised in the future.

18. <u>Force Majeure.</u>  Daggett shall not be deemed to be in default or breach of this Consent Decree by reason of any event which constitutes a force majeure. A force majeure event is defined as any event arising from causes beyond the reasonable control of Daggett or its contractors that delays or prevents performance including, without limitation, acts of God, acts of war, acts of terrorism, criminal acts, civil disturbance, vandalism, fire, explosion, extraordinary weather events, restraint by court order or public authority, or other causes beyond Daggett's reasonable control.

19. <u>Dispute Resolution</u>.  This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

20. <u>Meet and Confer</u>.  Either party to this Consent Decree may invoke the dispute resolution procedures of this Section 17 by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Settling Parties shall then meet and confer in good faith (either telephonically or

in person) within ten (10) business days after the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

21. <u>Settlement Conference</u>.  If the Settling Parties cannot resolve the dispute within thirty (30) days after the meet and confer described in paragraph 17, the Settling Parties agree to request a settlement meeting or conference before the Magistrate Judge assigned to this action.

22. <u>Motion</u>.  In the event the Settling Parties cannot resolve the dispute within sixty (60) days after the initial settlement meeting or conference with the Magistrate Judge, the Settling Parties agree that the dispute may be submitted to the Magistrate Judge by motion for adjudication and recommendation to the District Court.

23. <u>Notices</u>.  All notices, consents, approvals, requests, demands and other communications (collectively, "Notice") which the Settling Parties are required to, or desire to serve upon or deliver to each other shall be in writing and shall be given by electronic mail (preferred) or by certified United States mail, return receipt requested, addressed as set forth below:

    If to CRW:    Jack Silver
                       LAW OFFICE OF JACK SILVER
                       708 Gravenstein Highway North, #407
                       Sebastopol, CA 95472
                       lhm28843@sbcglobal.net

    If to Daggett:    Daggett Community Services District
                       Attn: General Manager and Board of Directors
                       33703 Second Street
                       P.O. Box 308
                       Daggett, CA 92327-0308

    COPY TO:    Rosslyn Hummer, Esq.
                       HANSON BRIDGETT, LLP
                       777 S. Figueroa St. Suite 4200
                       Los Angeles, CA 90017
                       bhummer@hansonbridgett.com

      Alene Taber, Esq.
ALENE TABER LAW, APC
1820 W Orangewood Ave, Suite 105
Orange, CA 92868-5052
alene@alenetaberlaw.com

      David A. Fike, Esq.
Fike & Boranian
401 Clovis Ave., Suite 202
Clovis, CA 93512
dfike@fikeboranianlaw.com

The foregoing addresses may be changed by Notice given in accordance with this Section. Any Notice sent by certified mail shall be deemed received two (2) days after the date of mailing. Any Notice sent by electronic mail shall be deemed received upon electronic transmission thereof provided sender does not receive electronic notice of non-delivery. If the date of delivery or receipt of any Notice to be given hereunder falls on a weekend or legal holiday, then such date of receipt shall automatically be deemed extended to the next business day immediately following such weekend or holiday for purposes of calculating time periods commencing upon the date of service. In the case of a Force Majeure, the days for which the Force Majeure is in place for any portion of the day shall toll the Notice period(s) under this Consent Decree.

24. <u>Attorneys' Fees</u>.  Other than the payment to CRW under <u>Section</u> 13, each Party shall bear its own past and future attorneys' fees and costs relating to the subject matter of this Consent Decree.

25. <u>Construction</u>. This Consent Decree shall be construed according to its plain and ordinary meaning except as to those terms defined in the SDWA, or specifically herein.

26. <u>No Assignments</u>. Each Party to this Consent Decree represents and warrants that it has not assigned, transferred, hypothecated, or sold to any third

person or entity, any of the rights or obligations released by or entered into under this Consent Decree. The Settling Parties agree that the rights and obligations established by this Consent Decree shall not be assigned, and any such assignment by a Party is invalid.

27. <u>Golden State is not a party to this Consent Decree and is not bound by it</u>.

28. <u>Counterparts/Signatures</u>.  This Consent Decree may be executed in multiple counterparts, each of which shall evidence one and the same agreement. The Settling Parties' signatures to this Consent Decree transmitted by electronic mail transmission shall be deemed original and binding.

29. <u>Headings</u>.  The headings used in this Consent Decree are for convenience of reference and shall not be used to define any provision.

30. <u>Full Settlement</u>.  This Consent Decree constitutes the full and final settlement of this matter.

31. <u>Integration Clause</u>.  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

32. <u>Modification of the Consent Decree</u>.  Unless otherwise agreed to in writing by the Settling Parties, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties and approved by the Court. Any request to modify any provision of this Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

33. <u>Severability</u>. The invalidity or unenforceability of any provision of this Consent Decree shall in no way affect the validity or enforceability of any other provision.

34. <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

35. <u>Negotiated Settlement</u>.  The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

36. <u>Authority</u>. Each person signing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute the Consent Decree on behalf of the entity and to bind it to all of the terms.

The Settling Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

**APPROVED AS TO CONTENT**:

CALIFORNIA RIVER WATCH

By: *s/ Larry Hanson*                              Dated: September 6, 2025
    Larry Hanson, Board President


DAGGETT COMMUNITY SERVICES DISTRICT

By: *s/ Robert Whipple*                           Dated: September 10, 2025
    Robert Whipple, Board President

**APPROVED AS TO FORM:**

LAW OFFICE OF JACK SILVER


By: *s/ Jack Silver*                                  Dated: September 5, 2025
    Jack Silver
    Attorneys for California River Watch

LAW OFFICE OF DAVID WEINSOFF

By: _s/ David J. Weinsoff_  Dated: September 5, 2025
David J. Weinsoff
Attorneys for California River Watch

HANSON BRIDGETT LLP

By: _s/ Rosslyn Hummer_  Dated: September 9, 2025
Rosslyn Hummer
Attorneys for Daggett Community Services District

ALENE TABER LAW, APC

By: _s/ Alene Taber_  Dated: September 10, 2025
Alene Taber
Attorneys for Daggett Community Services District

Good cause appearing therefore,

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a **FINAL JUDGMENT** between California River Watch and Daggett Community Services District.

Dated: October 1, 2025

HON. ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE